IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CMH HOMES, INC.,

                    Petitioner,

v.                         CIVIL ACTION NO.   2:14-cv-12762

TINA BROWNING, et al.,

                    Respondents.

MEMORANDUM OPINION AND ORDER

Pending before the Court are a petition to compel arbitration filed by Petitioner CMH Homes, Inc. ("Petitioner") and a motion to dismiss filed by Respondents Tina Browning and Dewey Foster ("Respondents").

*I. BACKGROUND*

On August 8, 2012, Respondents purchased a manufactured home from Petitioner. Respondents signed two agreements as part of the purchase:  a Sales Agreement and a Manufactured Home Retail Installment Contract and Disclosure Statement ("Retail Installment Contract").

The Retail Installment Contract contains an arbitration provision that provides, in pertinent part:

> Buyer and Seller (sometimes called the "Parties") agree to mandatory, binding arbitration ("Arbitration") of all disputes, claims, [and] controversies. . . arising from or relating to this Contract, any products/goods, services, insurance, or real property (including improvements to real property) sold or

> financed under this Contract, any events leading up to this Contract, the
> collection and servicing of this Contract, and the interpretation, scope,
> validity, or enforceability of this contract (with the exception of this
> agreement to arbitrate, the "Arbitration Agreement").   The interpretation,
> scope, validity or enforceability of this Arbitration Agreement or any clause or
> provision herein and the arbitrability of any issue shall be determined by a
> court of competent jurisdiction. . . .

(ECF 1-2 at 8).   Although the Sales Agreement itself is silent regarding arbitration, the Retail

Installment Contract, as above quoted, expressly covers in arbitration all disputes arising from or

relating to the Retail Installment Contract and any product or services sold or financed under the

Retail Installment Contract.

On January 29, 2014, Respondents sent Petitioner a letter alleging that the manufactured

home purchased by Respondents had serious and persistent defects, including improper set-up,

soft spots in the floor, bowed walls, and ceiling leaks.   (ECF 1-2 at 12–13.)   The letter advised

that Respondents revoked acceptance of the home and intended file a lawsuit for damages under

the West Virginia Consumer Credit and Protection Act ("WVCCPA") if not contacted by

Petitioner within 20 days.   (*Id.*)   Before receiving a reply from Petitioner, Respondents filed a

consumer complaint with the West Virginia Division of Labor ("WVDOL") on February 13,

2014.   (ECF 7-2.)

On March 5, 2014, Petitioner served Respondents, through counsel, with a letter

demanding that Respondents submit all of its claims arising from Respondents' purchase of the

manufactured home to arbitration, pursuant to the arbitration agreement in the Retail Installment

Contract.   (ECF 1-2 at 14–16.)   Petitioner asserted that it would seek the following in

arbitration: (1) a determination that Petitioner is not liable for fraud, breach of contract, breach of

warranty, negligence, gross negligence, violation of the WVCCPA, pain and suffering, or any

other claims arising from Respondents' purchase of the manufactured home; (2) attorney's fees and costs; and (3) the costs of arbitration.   (*Id.* at 15.)   The letter further provided that if Respondents failed to submit to arbitration within five days of receipt of the demand letter, Petitioner would file a petition to compel arbitration in a court of competent jurisdiction.   (*Id.*)

Respondents' counsel responded by letter dated March 7, 2014, which advised that after sending the initial letter, Respondents' counsel became aware of a recent decision by the Supreme Court of Appeals of West Virginia requiring consumers aggrieved by a matter involving a manufactured home to file an administrative complaint with the West Virginia Manufactured Housing Construction and Safety Board before filing a civil action in state court seeking damages.   (ECF 7-1 at 20.)   The letter advised that Respondents' consumer complaint had been filed with the WVDOL.   (*Id.*)   It requested that the parties hold off on litigation while the WVDOL's inspection was pending, noting that "[p]erhaps after the report is received and we have more information, we can reach a resolution of [Respondents'] claims."   (*Id.*)   The letter did not address Petitioner's demand for arbitration.

On March 20, 2014, Petitioner filed a petition in this Court requesting that the Court (1) order Respondents to submit to arbitration all disputes, claims, and causes of actions relating to the Sales Agreement and Retail Installment Contract pursuant to §4 of the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. § 4, and (2) enjoin Respondents from litigating in state or federal court any dispute subject to the arbitration agreement.   (ECF 1 at 7–8.)   Respondents moved to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).   (ECF 7 and 13.)

Respondents argue that the Court lacks subject matter jurisdiction because (1) Petitioner has failed to exhaust administrative remedies, (2) Petitioner lacks Article III standing to sue, (3) the petition to compel arbitration is not ripe, and (4) the petition to compel arbitration is moot. Respondents also argue that the Court should abstain from consideration of the case based on the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).   Finally, should the Court find that it has subject matter jurisdiction and that it should retain jurisdiction, Respondents argue that the Court should decline to compel arbitration because the arbitration provision is unconscionable.

## II. STANDARDS OF REVIEW

### 1. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action.   *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982).   A Rule 12(b)(1) motion may attack subject matter jurisdiction in two ways.   First, a Rule 12(b)(1) motion may attack the complaint on its face contending that the complaint "fails to allege facts upon which subject matter jurisdiction can be based."   *Campbell v. United States*, Civil Action No. 2:09–0503, 2010 WL 696766, at *7 (S.D. W. Va. Feb. 24, 2010) (Copenhaver, J.) (citing *Adams*, 697 F.2d at 1219).   Second, the defendant can assert that the allegations in the complaint establishing jurisdiction are not true.   *Id.*   In a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant.   *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

*2. Federal Rule of Civil Procedure 12(b)(6)*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Allegations "must be simple, concise, and direct" and "[n]o technical form is required."   Fed. R. Civ. P. 8(d)(1).   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a civil complaint.   *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged."   *Id.*   A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."   *Edwards*, 178 F.3d at 244.

### III. SUBJECT MATTER JURISDICTION

Although there is no dispute that there is a basis for subject matter jurisdiction in diversity,[1] Respondents argue that the Court lacks subject matter jurisdiction because (1) Petitioner has failed to exhaust administrative remedies, (2) Petitioner lacks Article III standing to sue, (3) the petition to compel arbitration is not ripe, and (4) the petition to compel arbitration is moot.[2]   Since the existence of subject matter jurisdiction is a threshold issue, the Court will first consider Respondents' arguments that subject matter jurisdiction does not exist, under the standard governing Rule 12(b)(1) motions.

#### 1. Exhaustion of Administrative Remedies

Respondents' first argument is that Petitioner failed to exhaust administrative remedies before pursuing the instant petition to compel arbitration under the FAA.  "The doctrine of exhaustion of administrative remedies is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking."  *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992).  In some contexts, a statutory exhaustion-of-remedies requirement has been held to implicate a court's subject matter jurisdiction.  *See, e.g., Jones v.*

---

[1]  § 4 of the FAA provides that a petition to compel arbitration can be filed in "any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties . . . ."  9 U.S.C. § 4.  "It is well established that § 4 does not create federal jurisdiction, but applies only when 'diversity of citizenship or some other independent basis for federal jurisdiction' exists."  *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432–33 (4th Cir. 2014) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  In other words, "a party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009).  Here, the Court has a basis for federal jurisdiction in the diversity of the parties.  *See* 28 U.S.C. § 1332.  There is no dispute that Respondents are West Virginia Residents, while Petitioner is a Tennessee corporation with its principal place of business in Tennessee.  Nor is there any dispute that the amount in controversy requirement is met.

[2]  Respondents have also styled their *Younger* abstention challenge a matter of subject matter jurisdiction. However, because it does not actually implicate subject matter jurisdiction, the challenge is discussed separately. *See* discussion *infra* note 5.

*Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (a plaintiff's failure to exhaust administrative remedies concerning a Title VII claim deprives federal courts of subject matter jurisdiction over the claim).   However, Respondents have not pointed the Court to the source of any exhaustion requirement applicable to petitions to compel arbitration under the FAA, and the Court is not aware of one.

Instead, Petitioner argues that it would be "unfair" to impose on consumers a duty to exhaust administrative remedies without imposing on manufactured home dealers a symmetrical duty.  (ECF 7 at 5).   Although Respondents fail to point even to the statutory source of Respondents' own alleged duty to exhaust administrative requirements, presumably they refer to W. Va. Code § 21-9-11a(b),[3] which provides as follows:

> (b) Period of exclusive administrative remedy.  No purchaser or owner of a manufactured home may file a civil action seeking monetary recovery or damages for claims related to or arising out of the manufacture, acquisition, sale or installation of the manufactured home until the expiration of ninety days after the consumer or owner has filed a written complaint with the board.   The board has a period of ninety days, commencing with the date of filing of the complaint, to investigate and take administrative action to order the correction of defects in the manufacture or installation of a manufactured home.   This period of exclusive administrative authority may not prohibit the purchaser or owner of the manufactured home from seeking equitable relief in a court of competent jurisdiction to prevent or address an immediate risk of personal injury or property damage.   The filing of a complaint under this article shall toll any applicable statutes of limitation during the ninety-day period but only if the applicable limitation period has not expired prior to the filing of the complaint.

According to Respondents, "[c]ommon sense" dictates that "a duty to exhaust administrative remedies would run both ways."   (ECF 13 at 2).

---

[3] In *State ex rel. Skyline Corp. v. Sweeney*, 754 S.E.2d 723 (W. Va. 2014), Supreme Court of Appeals of West Virginia held that, pursuant to W. Va. Code § 21-9-11a(b), consumers aggrieved by a matter involving a manufactured home must file an administrative complaint with the West Virginia Manufactured Housing Construction and Safety Board, and then wait ninety days, before filing a civil action in state court seeking damages. In a letter dated March 7, 2014, Respondents' counsel informed Petitioner that Respondents had filed a consumer complaint in order to comply with this decision.

7

By its terms, W. Va. Code § 21-9-11a(b) unambiguously applies only to purchasers or owners. Petitioner is neither. Even assuming for the sake of argument that the duty to file an administrative complaint ran "both ways," that duty unambiguously applies only when a party seeks monetary recovery or damages. Yet the relief sought before this Court does not include any monetary recovery or damages. The instant petition to compel arbitration seeks only to refer all claims to arbitration and to enjoin Respondents from litigating in state or federal court any dispute subject to the arbitration agreement.[4]

Thus, Respondents' exhaustion argument is without merit.

*2. Article III Standing*

"To satisfy the constitutional standing requirement, a plaintiff must provide evidence to support the conclusion that: (1) 'the plaintiff . . . suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there [is] a causal connection between the injury and the conduct complained of'; and (3) 'it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 458 (4th Cir. 2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Respondents allege that Petitioner has suffered no "injury in fact." (ECF 7 at 5–6.)

The right to arbitration under 9 U.S.C. § 4 is a legally protected interest that affects a petitioner in a personal and individual way. *See Int'l Bhd. of Elec. Workers, AFL-CIO Local 1245 v. Citizens Telecomms. Co. of California*, 549 F.3d 781, 788 (9th Cir. 2008). At the same

---

[4] The Court notes that, Respondents having filed a consumer complaint on February 13, 2014, it appears that the ninety-day term of "exclusive administrative authority" under W. Va. Code § 21-9-11a(b) has run and that Respondents are free to pursue claims seeking damages related to the purchase of the manufactured home. However, whether Petitioner or Respondents were required to exhaust any administrative remedies before bringing a claim in arbitration, and whether they in fact did so, would be issues properly for the arbitral tribunal to resolve.

time, relief under § 4 is available only to persons "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate."   9 U.S.C. § 4.   A person is so "aggrieved" when an adverse party commences litigation of a controversy putatively governed by a contractual arbitration clause, fails to comply with an arbitration demand, or otherwise resists arbitration.   *See Discover Bank v. Vaden*, 489 F.3d 594, 598 & 607 n.20 (4th Cir. 2007); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1066 (3d Cir. 1995); *Downing v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 725 F.2d 192, 195 (2d Cir. 1984).

According to Petitioner's demand letter Petitioner seeks both to arbitrate any claims Respondents may have and to arbitrate a request by Petitioner for declaratory relief arising from Respondents' statements that they have revoked their contract and are entitled to monetary damages.   Not only did Respondents initiate a consumer complaint against Petitioner rather than commencing arbitration, but there is no evidence that Respondents intend to submit to the requested arbitration, and Respondents have opposed the instant petition to compel arbitration in this Court for almost a year now.

Thus, for the purposes of the present petition to compel arbitration, Petitioner has suffered an actual "injury in fact," as it is "aggrieved" by Respondents' refusal to arbitrate.

*3. Ripeness*

"A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'"   *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996)).   There is great overlap between the requirements of standing and the requirement of ripeness, and, to the extent that they differ, "[r]ipeness properly should be understood as

involving the question of *when a party may seek preenforcement review of a statute or regulation*," ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.4 (6th ed. 2012) (emphasis in original), in other words, when the "threat of enforcement of [a] statute amounts to an Article III injury in fact," *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2343 (2014).

Here, pre-enforcement review is not at issue, and Respondents' ripeness challenge is not distinct from its exhaustion or its standing arguments. Respondents argue that the petition to compel arbitration is not ripe because Respondents have not initiated any court proceedings. (ECF 7 at 6.) This argument appears to assume that any injury suffered by Petitioner is contingent on Respondents filing suit in state court. However, as noted in the prior discussion of standing, Petitioner has already suffered an Article III injury in fact. Respondents also argue that the petition to compel arbitration is not ripe because Respondents have not exhausted available administrative remedies. (*Id.*) However, as noted in the prior discussion of exhaustion, Petitioner had no duty to exhaust administrative remedies before seeking to compel arbitration.

Thus, the petition to compel arbitration is ripe.

*4. Mootness*

Respondents' reply also asserts that Petitioner has not suffered any injury as, since the administrative complaint was filed, an inspection has taken place, the manufacturer has made several repairs, and more repairs are scheduled. (ECF 13 at 2.) Respondents argue that if all necessary repairs should be made, no controversy would remain. (*Id.*) Although Respondents have styled this an issue of ripeness, it is more properly characterized as an argument that the petition to compel arbitration is moot. However, this position appears to be based on

speculation. In the nine months since Petitioner's reply was filed, the Court has not been advised of any settlement, and the docket reflects the fact that the parties have recently engaged in discovery.

Thus, the petition to compel arbitration is not moot.

## IV. YOUNGER *ABSTENTION*

Next, Respondents argue that the Court should abstain from consideration of the case based on the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).[5]

*Younger v. Harris*, 401 U.S. 37 (1971), established the principle that federal courts may not enjoin pending state court proceedings. Although set in the context of a criminal proceeding, the *Younger* rule has been broadened in scope to include all state civil and administrative proceedings in which the important state interests are involved. *See Juidice v. Vail*, 430 U.S. 327 (1977) (civil proceeding); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423 (1982) (state administrative proceedings).

Respondents argue that this Court should abstain from jurisdiction pursuant to the *Younger* doctrine, because the pending state administrative action is ongoing and involves important state interests relating to the interpretation and enforcement of the WVCCPA. (ECF 7 at 7.) Respondents do not single out Petitioner's request for an anti-litigation injunction in

---

[5] In their briefing, Respondents have lumped this challenge together with their other subject matter jurisdiction challenges. Although Respondents suggest that *Younger* abstention arises from lack of subject matter jurisdiction, this is "technically incorrect." *Nivens v. Gilchrist*, 444 F.3d 237, 257 n.7 (2006). The Fourth Circuit has emphasized that "*Younger* abstention does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already commenced." *Id. Accord Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("This Court's precedent makes clear that whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction."). Thus, the Court, having determined that subject matter jurisdiction exists, proceeds to consider whether it should abstain from exercising jurisdiction. Courts have allowed a *Younger* abstention challenge to be raised both in Rule 12(b)(6) motion and in a Rule 12(b)(1) motion. *See Verbal v. Krueger*, No. 1:09CV990, 2010 WL 276644, at *6 (M.D.N.C. Jan. 15, 2010). Here, Respondents have brought both 12(b)(1) and 12(b)(6) challenges, and, whether a 12(b)(1) or a 12(b)(6) standard were to be applied to this issue, the outcome would be the same.

making this challenge.   To the extent that Respondents assume that *Younger* would provide a basis for the Court declining to hear this entire case, and not merely for declining to hear Petitioner's request for an injunction, that assumption is wrong.   A request to compel arbitration pursuant to the FAA is distinct from a request to enjoin a related state proceeding.   Thus, Respondents' abstention arguments are properly aimed only at Petitioner's request for an injunction.

However, Petitioner does not seek to enjoin the pending state administrative proceeding. (*See* ECF 1 at 8.)   Rather, Petitioner requests that this court enjoin Respondents from litigating in state or federal court any dispute subject to the arbitration agreement.   (*Id.*)   No action is presently pending in any state court.   (*See* ECF 7 at 6.)

Accordingly, *Younger* provides no reason for the Court to abstain from hearing any part of this case.

## *V. ARBITRATION*

Having found that the Court has subject matter jurisdiction and need not abstain from exercising jurisdiction, the Court will consider the merits of whether it should compel arbitration.

### *1. Enforcing an Agreement to Arbitrate*

"To state a claim to compel arbitration under the FAA, the plaintiff must allege (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."   *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).   If such a showing is made and a defense to the enforcement of the arbitration

agreement is not established, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration" on arbitrable claims.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

However, an arbitration agreement will not be enforced if a defense to the enforcement of the agreement is established.  Under the FAA arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  While courts may not invalidate arbitration agreements "under state laws applicable only to arbitration provisions," they may do so based on "generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996).  *See also Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1204 (2012); *Rent–A–Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010); *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 11 (1984).  A court may refer the issue of the arbitrability of a dispute to the arbitrator, but only if there is "clear and unmistakable" evidence from the arbitration agreement of the parties' intent to do so. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

### 2. Unconscionability

Respondents have not contested Petitioner's claims that the four elements of *Whiteside*'s test are met, and the Court finds that they are established.  However, Respondents argue, that the arbitration agreement is unenforceable because it is unconscionable under West Virginia contract law.  The Court proceeds to consider this argument pursuant to the standard governing Rule 12(b)(6) motions.

Under West Virginia law, unconscionability is analyzed in terms of procedural and substantive unconscionability. *See Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 227 (W. Va. 2012). "A contract term is unenforceable if it is both procedurally and substantively unconscionable." Syl. Pt. 20, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 262 (W. Va. 2011). "However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *Id.*

Respondents argue that the arbitration clause that Petitioner seeks to enforce is unconscionable because (1) the discovery it permits is not as extensive as that provided for by the Federal Rules of Civil Procedure, (2) the Arbitration Agreement designates the AAA to conduct the arbitration, (3) the arbitration agreement lacks mutuality because only Respondents are required to submit to arbitration, and (4) the arbitration agreement was part of a contract of adhesion. However, Respondents' arguments are foreclosed by *Brown v. CMH Mfg.*, No. CIV.A. 2:13-31404, 2014 WL 2973349 (S.D.W. Va. July 2, 2014) (Copenhaver, J.), in which a court in this district granted a motion to compel arbitration pursuant to an arbitration provision that is in all respects identical to the one at issue here, after thoroughly considering arguments identical to those presented by Respondents here. *See id.* at * 5–11. Following *Brown*, the Court finds that the arbitration agreement presented here is not unconscionable.[6]

---

[6] The Court does so having considered all of the briefing on this issue. Respondents' motion to dismiss argues summarily that the arbitration agreement is unconscionable and that the burden is on Petitioner to allege specific facts in support of the conclusion that the arbitration agreement is enforceable. (*Id.* at 8–9.) In its response brief, Petitioner argues that unconscionability is a defense to a contract and that therefore the burden of proving unconscionability lies with Respondents, not with Petitioner. (ECF 10 at 6.) It also asserts that Respondents failed to identify a single term in the arbitration agreement that renders the arbitration agreement unenforceable, thus failing to meet their burden. (*Id.*) Respondents' reply brief introduces several specific and extensive arguments

Thus, the Court concludes that the arbitration agreement is valid and enforceable.[7]

### VII. CONCLUSION

For the reasons set forth above, the Court **DENIES** Respondents' motion to dismiss [ECF 6]. Accordingly, and in light of the "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the petition to compel arbitration [ECF 1] is **GRANTED**.[8]   The Court **ORDERS** the parties to proceed to arbitration in accordance with the terms of the arbitration agreement and **DISMISSES** this matter from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record.

ENTER:          March 19, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

in support of their unconscionability challenge, as summarized above. (ECF 13 at 3–9.) In light of the fact that this Court's Local Rules prohibit Petitioner from responding to the new arguments raised by Respondents without leave of court, *see* Local Rule of Civil Procedure 7.1(a)(7) ("Surreply memoranda shall not be filed except by leave of court."), Petitioner has moved to strike the new arguments, or in the alternative, for leave to file a surreply (ECF 14). "Courts have broad discretion to decline to consider arguments or issues first raised in a reply brief." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 (D. Md. 2009). However, this Court declines to strike portions of Respondents' reply brief. The Court, having considered Respondents' reply in its entirety, does not find that a surreply would alter the Court's analysis in light of *Brown*. Thus, it is unnecessary for the Petitioner to file a surreply, and Petitioner's motion to strike [ECF 14] is **DENIED**.

[7] The Court notes that, although the Court on November 10, 2014, granted the parties limited discovery related to the issue of unconscionability, the parties have not filed motions for summary judgment, although the deadline to do so was March 2, 2015, pursuant to the Scheduling Order currently in effect.

[8] The petition to compel arbitration also seeks to enjoin Respondents from litigating in state or federal court any dispute subject to the arbitration agreement. However, the parties' briefs reveal that no such claim is or has been pending. The Court assumes that the present relief will suffice.